UNITED STATES of America, Plaintiff,

v.

Kiamesha G. HERRERA, Defendant.

No. CRIM. 3:98–CR–331–D.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 10, 1998.

Linda S. Eads, Ass't U.S. Atty., Dallas, TX, for Plaintiff.

Carlton McLarty, Ass't Federal Public Defender, Dallas, TX, for Defendant.

FITZWATER, District Judge.

This appeal from an order of the magistrate judge dismissing a petition of a pretrial services officer for action on conditions of pretrial release presents the question whether the attorney for the government alone has the authority to initiate a proceeding for revocation of an order of pretrial release. Concluding in this case of apparent first impression that only the attorney for the government possesses such authority, the magistrate judge's order is AFFIRMED.

## I

A grand jury indicted defendant Kiamesha Herrera ("Herrera") for wire fraud. Following her arrest, the government moved for pretrial detention. United States Magistrate Judge Jeff Kaplan conducted a detention hearing and denied the government's motion. He ordered that Herrera be released on bond and that she comply with certain conditions, including the requirement that she refrain from using controlled substances. According to the U.S. Pretrial Services Agency officer assigned to Herrera's case, Herrera violated this condition by using marihuana, as evidenced by her testing positive for the use of this controlled substance on November 18, November 21, and November 24, 1998.

On November 24, 1998 the pretrial services officer filed a petition for action on conditions of pretrial release. The petition[1] sought, pursuant to 18 U.S.C. § 3148(b), a hearing for revocation of the release order. This court issued an order to arrest Herrera for a show cause hearing. Judge Kaplan conducted the hearing on December 4, 1998.

Before the hearing commenced, Herrera orally moved to dismiss the petition for lack of jurisdiction. She asserted that only the attorney for the government, not a pretrial services officer, may initiate a proceeding for revocation of release. After considering the relevant statutes and the parties' arguments, and recognizing the dearth of guiding precedent,[2] Judge Kaplan granted Herrera's motion. He did not explicitly concur in her assertion that the defect deprived the court of jurisdiction, but he held in his written order that § 3148(b) is clear and unambiguous and does not authorize the Pretrial Services Agency to initiate a revocation proceeding.[3]

The government appeals the order pursuant to 18 U.S.C. § 3145(c), contending that the Pretrial Services Agency is statutorily authorized by 18 U.S.C. § 3154(5) to initiate a proceeding to revoke pretrial release, that it is common practice throughout the United States for the Agency to do so, and that a contrary ruling would improperly result in higher costs, longer administrative delay, and less efficiency.

## II

■ The court reviews *de novo* an appeal brought pursuant to 18 U.S.C. § 3145(c) of a decision denying revocation. *United States v. Jones,* 804 F.Supp. 1081, 1090 (S.D.Ind. 1992); *see United States v. Kinslow,* 105 F.3d 555, 557 (10th Cir.1997). The court must first decide whether the appeal presents an issue of subject matter jurisdiction or of a procedural defect in initiating a revocation proceeding.

Herrera moved to dismiss the petition for lack of jurisdiction, which the court understands to mean subject matter jurisdiction. As noted, Judge Kaplan did not expressly rest his dismissal order on this basis. The court now rejects Herrera's contention that, absent a motion filed by the attorney for the government, the court is deprived of jurisdiction.[4]

■ Subject matter jurisdiction ordinarily refers to a court's power or authority to hear and determine a class of cases to which a particular case belongs. *See* BLACK'S LAW DICTIONARY at 854, 1425 (6th ed.1990). Herrera does not contend, nor could she plausibly maintain, that this court lacks the power to hear and determine a

---

1. This petition alleges only that Herrera tested positive for marihuana use on November 18, 1998. The officer filed on December 2, 1998 an amended petition that alleges that Herrera tested positive for marihuana use on November 21 and November 24, 1998.

2. As Judge Kaplan noted in his order, "Not surprisingly, the Court was unable to locate any cases even remotely on point." Dec. 7, 1998 Order at 1 n. 1.

3. He also concluded that it is improper for the Agency, as part of the judicial branch, to perform a prosecutorial role by initiating such a proceed-

ing. The court need not decide whether this conclusion is correct. *Cf.* 18 U.S.C. § 3148(c) (providing that judicial officer may commence contempt prosecution for release condition violation).

4. For this reason, the court stresses that today's ruling does not subject to collateral attack detention orders issued in prior cases in response to petitions filed by a pretrial services officer, where the defendant did not timely object to the proceeding on this basis. The procedural defect identified in the present case is waived absent a timely objection.

proceeding to revoke her release. *See* 18 U.S.C. § 3148(b) (authorizing judicial officer who ordered defendant's release to conduct hearing concerning revocation of release order). Instead, Herrera asserts that the pretrial services officer improperly initiated the proceeding because § 3148(b) authorizes only the attorney for the government to do so. This contention is properly understood as asserting a procedural error rather than a jurisdictional defect. *See* BLACK'S LAW DICTIONARY at 1204 (defining "procedure" as the form, manner, and order of conducting a suit). Accordingly, the court rejects Herrera's contention that the court lacks subject matter jurisdiction. The court will decide only whether Judge Kaplan correctly dismissed the petition on the ground that the pretrial services officer lacked authority to initiate the instant revocation proceeding under § 3148(b).

### III

### A

To resolve the question presented, the court must interpret two statutory provisions: 18 U.S.C. §§ 3148(b) and 3154(5). Section 3148(b) provides:

Revocation of release.—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

(1) finds that there is—

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that—

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

Section 3154 states, in relevant part, that

Pretrial services functions shall include the following:

\* \* \* \* \* \*

(5) Inform the court and the United States attorney of all apparent violations of pretrial release conditions, arrests of persons released to the custody of providers of pretrial services or under the supervision of providers of pretrial services, and any danger that any such person may come to pose to any other person or the community, and recommend appropriate modifications of release conditions.

\* \* \* \* \* \*

Neither the government nor the court has located any precedent that dictates the answer to the question whether a pretrial services officer may initiate a proceeding to revoke an order of release under § 3148(b).

The court must determine the intent of Congress from the relevant statutory language. "It is the intent of Congress—not the choice of a judge—that must control." *Senior Unsecured Creditors' Comm. v. FDIC,* 749 F.Supp. 758, 765 (N.D.Tex.1990) (Fitzwater, J.) (quoting *Driggs v. United States,* 706 F.Supp: 20, 21 (N.D.Tex.1989) (Fitzwater, J.)).

 In a statutory construction case, the court must begin with the language of the statute. *Bailey v. United States,* 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *Reich v. Arcadian Corp.,* 110 F.3d 1192, 1195 (5th Cir.1997). The court is required to read the statute as a whole to ascertain the meaning of the language in the context of the desired goals that Congress envisioned. *Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 448 (5th Cir.1995). Absent a clearly expressed legislative intention to the contrary, the language of the statute itself is to be regarded as conclusive. *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *see Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993); *United States v. One Parcel of Land in Name of Mikell,* 33 F.3d 11, 12 (5th Cir.1994). Where the terms of the statute are unambiguous, judicial inquiry is complete. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); *Reich,* 110 F.3d at 1195. Only if the language is unclear, or if following the plain meaning of the statute would lead to bizarre results, does the court turn to extrinsic evidence of the statute's meaning. *See Johnson v. Sawyer,* 120 F.3d 1307, 1319 (5th Cir.1997); *Hightower,* 65 F.3d at 448.

### B

 Section 3148(b) provides, in relevant part, that *"The attorney for the Government may* initiate a proceeding for revocation of an order of release by filing a motion with the district court." (emphasis added). Congress has spoken clearly and unambiguously. In identifying the entity or person who may initiate a revocation proceeding, § 3148(b)

unmistakably refers only to the attorney for the government. No other possible initiators, such as a pretrial services officer or the court itself, are mentioned. The explicit inclusion only of the attorney for the government is properly understood as an express exclusion of all others. *See Quest Medical, Inc. v. Apprill,* 90 F.3d 1080, 1091 (5th Cir.1996) (holding that Texas statute that allows aggrieved seller to seek compensatory damages, costs, and attorney's fees does not permit recovery of exemplary damages); *Shell Oil Co. v. Federal Energy Admin.,* 400 F.Supp. 964, 968 (S.D.Tex.) ("An intentional omission of a word [from a statute] is evidence that Congress did not intend to grant a power which the inclusion of the word would have given."), *aff'd,* 527 F.2d 1243 (Temp.Emer.Ct.App.1975); *see also Williams v. Sinclair,* 529 F.2d 1383, 1389 n. 9 (9th Cir.1975) (holding that federal statute that provided that persons who acquired securities pursuant to false registration statement "may ... sue" did not cover shareholders who did not acquire their securities pursuant to the allegedly false registration statement).

Because the statute is unambiguous in this respect, the court must uphold Congress' clear intent and conclude that § 3148(b) permits only the attorney for the government to initiate a proceeding for revocation of a release order. Were the court to hold otherwise, it would impermissibly supply a statutory term that Congress omitted. *See Bates v. United States,* 522 U.S. 23, 118 S.Ct. 285, 287, 139 L.Ed.2d 215 (1997) (stating that courts "ordinarily resist reading words ... into a statute that do not appear on its face."); *DeSisto College, Inc. v. Town of Howey-in-the-Hills,* 706 F.Supp. 1479, 1495 (M.D.Fla.), *aff'd sub nom. DeSisto College, Inc. v. Line,* 888 F.2d 766 (11th Cir.1989).

The court's interpretation of § 3148(b) is supported by a holistic reading of § 3148. *See Hightower,* 65 F.3d at 448 (court must read statute as a whole to ascertain Congress' intent). Section 3148(a)[5] sets out the available sanctions for violating a condition of

---

5. Section 3148(a):
 Available sanctions.—A person who has been released under section 3142 of this title [pretrial release], and who has violated a condition

of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

pretrial release: revocation of release, an order of detention, and prosecution for contempt of court. Section 3148(b) relates to revocation and detention and states that the attorney for the government may initiate the proceeding. Section 3148(c) addresses contempt of court and provides that the judicial officer may commence a prosecution for contempt.[6] Section 3148(b) sets out the judicial officer's role in a release revocation proceeding, but does not mention the judicial officer as one who may initiate the proceeding. Sections 3148(b) and (c) thus assign different roles to the attorney for the government and the judicial officer, neither of which is to be filled by a pretrial services officer.

In 1982 Congress enacted the Pretrial Services Act (the "Act"), 18 U.S.C. §§ 3152–3156. The Act "establishes responsibility with the Pretrial Services Agency for various aspects of supervising and reporting on defendants released before trial under the Bail Reform Act." *United States v. Gundersen,* 978 F.2d 580, 584 (10th Cir.1992). Among other things, § 3154(5) authorizes the Pretrial Services Agency to inform the court and the United States attorney of apparent violations of pretrial release conditions and to recommend appropriate modifications to those conditions. The government contends the Pretrial Services Agency's function to *inform* the court of a violation and to *recommend* appropriate modifications of release conditions encompasses *initiation* of a release revocation proceeding under § 3148(b). The court disagrees.

Congress did not define the terms "initiate," "inform," or "recommend" in §§ 3148(b) and 3154(5). The court must therefore construe them according to their ordinary and natural meanings. *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *see FDIC v. Enventure V,* 77 F.3d 123, 126 (5th Cir.1996) (holding that court must assume that legislative purpose is expressed by ordinary meaning of words used). "Initiate" commonly means to "commence; start; [or] introduce." BLACK'S LAW DICTIONARY at 784. By contrast, "inform" means "[t]o disclose or give information," AMERICAN HERITAGE DICTIONARY at 660 (2d College ed.1991), and "recommend" is usually defined as "[t]o advise or counsel," BLACK'S LAW DICTIONARY at 1272. By their definitions, the terms "inform" and "recommend" are not synonymous with, and do not include, initiating a proceeding. The plain language of § 3154(5) merely states that the Pretrial Services Agency is authorized to furnish information and opinions to the court and the United States attorney; it does not authorize a pretrial services officer to initiate a particular proceeding. Moreover, Congress is presumed to know the law at the time it enacts legislation, or, in this case, to know that it had authorized only the attorney for the government to initiate a release revocation proceeding. *See South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329, 118 S.Ct. 789, 801, 139 L.Ed.2d 773 (1998) (holding that Congressional act that ratified agreement to cede unallotted reservation land to United States did not preserve land's reservation status because *inter alia* provision of agreement signaled distinction between reservation and ceded land). If Congress had intended to expand the list of persons who may initiate a release revocation proceeding under § 3148(b) to include pretrial services officers, it could have expressly done so in the Act. Without any evidence of such an intent, the court holds that § 3145(5) does not amend § 3148(b) to authorize a pretrial services officer to initiate a release revocation proceeding. The court holds that § 3148(b) permits only the attorney for the government to do so.[7]

That § 3148(b) authorizes only the attorney for the government to initiate a revocation proceeding, and § 3148(c) empowers only the judicial officer to commence a prose-

---

**6.** "Judicial officer" is defined in 18 U.S.C. § 3156(a)(1) and includes a person or court authorized to detain or release a person before trial.

**7.** The court's decision does not suggest that a petition for revocation of a term of probation or of supervised release must be initiated by the attorney for the government rather than by a probation officer. Neither 18 U.S.C. § 3565 (probation revocation), 18 U.S.C. § 3583(e)(3) (supervised release revocation), nor Fed. R.Crim.P. 32.1 (addressing probation and supervised release revocation procedures) contains a provision, similar to § 3148(b), that dictates who may initiate a revocation proceeding.

cution for contempt, does not mean that the government and the judicial officer must blindly carry out their functions without input from a pretrial services officer. As noted, § 3154(5) expressly authorizes the Pretrial Services Agency to inform the court and the United States attorney of all apparent violations of pretrial release conditions and to recommend appropriate modifications to those conditions. The attorney for the government or the judicial officer may then initiate appropriate proceedings based on this information.

## C

■ The government advances two other arguments for allowing the Pretrial Services Agency to initiate a revocation proceeding. The first is that the Agency has regularly done so throughout the United States. But the commonality of a practice—even if eminently wise—cannot supply a grant of authority that Congress did not confer. The second contention is that to read the relevant statutes in a manner that divests the Pretrial Services Agency of such authority would impermissibly produce higher costs, longer administrative delays, and less efficiency. Once again, these reasons do not carry force. The court should not construe an unambiguous statute to reach a contrary result that efficiency counsels. *See Director, Office of Workers' Compensation Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135–36, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995) (holding that court cannot add features to statute that will achieve its statutory purposes more effectively); *United States v. Thomas*, 991 F.2d 206, 215 (5th Cir.1993) ("Actual or potential aberrant results ... do not excuse [a court's] reading (or writing) anything into or out of a statute that Congress has consciously adopted."); *see also Hammack v. Baroid Corp.*, 142 F.3d 266, 271 (5th Cir.1998) ("theories of underlying intent or purpose cannot trump statutory language.").

\*　　\*　　\*　　\*　　\*　　\*

In response to a timely objection, the magistrate judge correctly held that the revocation proceeding in this case was procedurally defective because it was initiated by the pretrial services officer rather than by the attorney for the government.[8] Accordingly, the magistrate judge's order dismissing the petition is

AFFIRMED.

---

**8.** Of course, the government remains free to initiate a new petition on the same grounds as did the pretrial services officer. Nothing in the magistrate judge's order forecloses this possibility. Even if it did, because this court's review is *de novo,* today's order controls.