IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-50056

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

$157,808.97, MORE OR LESS, IN UNITED STATES CURRENCY,
PROCEEDS FROM THE SALE AND/OR LIQUIDATION OF REAL
PROPERTY LOCATED AT 11405 WARE SEGUIN ROAD, SCHERTZ,
BEXAR COUNTY, TEXAS

Defendant

EMERY RANDLE

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-cv-310

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Emery Randle ("Randle") appeals the district court's

civil forfeiture order finding him to be the innocent owner of only 50% of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

respondent currency. Because Randle does not argue—much less prove—that he meets the statutory requirements of innocent ownership for the remainder of the respondent currency, we affirm the ruling of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

In December 1997, Randle and his future-wife Robin Randle ("Robin") purchased a piece of property on Ware Seguin Road in Bexar County, Texas (the "Ware Seguin property"). They purchased the property together, and thus each owned an undivided 50% interest in the community estate. Shortly after purchasing the Ware Seguin property, Randle and Robin married and built a home on the property. Robin began living at the Ware Seguin property upon completion of the house; Randle, however, resided in Houston, Texas.

In May and June 2005, while the subject of a Drug Enforcement Agency ("DEA") investigation, Robin sold methamphetamine from the Ware Seguin property. She was arrested on June 28, 2005, and indicted on July 5, 2005. She later pleaded guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine and admitted that she used the Ware Seguin property to facilitate these transactions. The Government later filed a lis pendens on the Ware Seguin property.

On July 18, 2005, Randle and Robin divorced, with the Decree of Divorce awarding Randle the Ware Seguin property. On July 26, 2005, a warranty deed conveying the entirety of the Ware Seguin property was executed and recorded in Randle's name.

B.    Procedural Background

In January 2006, the Government learned that Randle was attempting to sell the Ware Seguin property. The Government and Randle agreed that the property could be sold—requiring the Government to remove the lis pendens—and that the proceeds of the sale would be seized and held by the

2

United States Marshals Service pending the outcome of forfeiture proceedings. Randle soon sold the Ware Seguin property, and the Government seized the check for $157,808.97 (the "respondent currency"). The Government then filed a forfeiture action against the respondent currency. Randle was the only individual to file a claim in the forfeiture proceedings.

In its pretrial submissions, the Government asserted two theories of why the currency was subject to forfeiture: as the proceeds from the sale of property purchased with the proceeds of drug transactions, see 21 U.S.C. § 881(a)(6), or as the proceeds from the sale of property used or intended to be used to facilitate drug transactions, see id. § 881(a)(7). The Government also offered a Proposed Conclusion of Law that stated,

> Given that the United States has established that the Respondent Real Property was used to facilitate Robin Randle's illegal narcotics trafficking activities, and pursuant to Title 21 U.S.C. § 881(h), the United States' interest in at least Robin Randle's one half community property interest in the Respondent Real Property vested on or about May, 2005 . . . .

In response, Randle asserted that the Ware Seguin property was not purchased with the proceeds of drug transactions and that, as the innocent owner of the entirety of the Ware Seguin property, he was entitled to 100% of the proceeds from its sale. After a trial, the jury found that (1) the Government had proved that the Ware Seguin property was used or intended to be used to facilitate a drug transaction, (2) Randle had proved that he was an innocent owner regarding such use or intended use of the Ware Seguin property, and (3) the Government had failed to prove that the Ware Seguin property was purchased with the proceeds of a drug transaction.

The Government then requested that the court award it 50% of the respondent currency. The Government asserted that—in line with the above-quoted Proposed Conclusion of Law—it was entitled to the proceeds stemming from the sale of Robin's interest, which it had acquired prior to the sale under

civil forfeiture's relation back doctrine. In response, Randle suggested that he was entitled to all of the respondent currency as an innocent owner. At the court's request, the Government prepared two proposed judgments. The first awarded 100% of the respondent currency to Randle as the innocent owner of the Ware Seguin property. The second awarded 50% to Randle as an innocent owner of half of the Ware Seguin property and 50% to the Government as owner of the other half under the relation back doctrine. After considering the parties' arguments as to which proposed judgment was proper, the district court concluded that Randle had proved that he was an innocent owner of his original interest in the Ware Seguin property, but not of any interest he acquired from Robin in their divorce. Therefore, the district court reasoned, title over Robin's interest vested in the Government in May 2005, and Randle never took title to this interest. The district court thus awarded Randle 50% of the respondent currency and the remaining 50% to the Government.

Randle now brings this appeal, arguing that the jury found him to be the innocent owner of the entirety of the Ware Seguin property and that, as such, he is entitled to 100% of the respondent currency. The Government does not contest that Randle is entitled to 50% as an innocent owner, but asserts that the district court correctly concluded that Randle had proved his innocent-owner defense as to only half of the Ware Seguin property. We review the district court's legal conclusions as to the forfeiture order de novo. United States v. 1977 Porsche Carrera 911, 946 F.2d 30, 33 (5th Cir. 1991).

## II. DISCUSSION

A. Innocent Ownership Under CAFRA

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, governs federal civil forfeiture proceedings. Under CAFRA, the Government bears the initial burden of proving that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). It is undisputed that the Government met

this burden in the present case by proving that the Ware Seguin property was used to facilitate a drug transaction. See 21 U.S.C. § 881(a)(7).

CAFRA contains an "innocent-owner defense," stating that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). Section 983(d) provides distinct requirements for the innocent ownership of different types of property interests. First, one can innocently own "pre-existing interests," or property interests acquired prior to the conduct giving rise to forfeiture. Section 983(d)(2) sets out the conditions for proving innocent ownership of a pre-existing interest. Second, one can innocently own "after-acquired interests," or property interests acquired after the conduct giving rise to forfeiture. Section 983(d)(3) sets out the conditions for proving innocent ownership of such an interest. The claimant bears the burden of proving that she is an innocent owner. Id. § 983(d)(1).

B.     Randle's Property Interests and the Innocent Ownership Thereof

In the present case, the conduct giving rise to forfeiture was Robin's May 2005 drug transactions. Thus, the undivided 50% community property interest that Randle acquired in the Ware Seguin property upon its purchase is a pre-existing interest for the purposes of CAFRA.[1] The 50% interest in the Ware Seguin property that Randle acquired in his July 2005 divorce is an after-acquired interest for the purposes of CAFRA, and § 983(d)(3) governs any claim to innocent ownership of that interest. On appeal, Randle concedes that this is the proper characterization of his property interests. Therefore, Randle effectively acknowledges that it is his burden to prove that he was an innocent owner of the after-acquired interest.

In the forfeiture proceedings, Randle argued only the elements of § 983(d)(2)—the section governing pre-existing interests. Randle did not present

---

[1] The parties do not dispute that Randle proved he was an innocent owner of this pre-existing interest.

a § 983(d)(3) innocent-owner defense before the district court, and he offers no argument on appeal that he meets § 983(d)(3)'s conditions.[2] As Randle has failed to adequately argue—much less prove—that he was an innocent owner of the after-acquired interest under § 983(d)(3), we affirm the district court's order giving 50% of the respondent currency to the Government.

## C.    Randle's Other Arguments

We briefly address Randle's other contentions on appeal.  First, Randle's reliance on this court's pre-CAFRA decision in United States v. Mikell, 33 F.3d 11 (5th Cir. 1994), is misplaced.   The Mikell court held that ownership of property for the purposes of an innocent owner-defense is determined by looking to who owned the property at the time the Government filed the forfeiture action.  Id. at 13.  Randle argues that, because he was the 100% owner of the Ware Seguin property when the Government filed the instant forfeiture action, and because the jury found that he proved his innocent ownership defense, he is an innocent owner of 100% of the Ware Seguin property and thus entitled to

---

[2] As the district court noted, Randle would likely be unsuccessful in arguing that he was the innocent owner of the after-acquired property interest since he does not appear to meet all of § 983(d)(3)'s criteria.  There is, for example, some indication that Randle should have known about the potential forfeiture.  See 18 U.S.C. § 983(d)(3)(A)(ii) (requiring an owner to prove that she "did not know and was reasonably without cause to believe that the property was subject to forfeiture").  Also, Randle's primary residence was in Houston, not at Ware Seguin.  See id. § 983(d)(3)(B)(i) (requiring an owner who did not take property for value to prove that the property is her primary residence).  And it is questionable whether forfeiture of the Ware Seguin property would deprive Randle of the means to maintain reasonable shelter, as he was attempting to sell it before the Government even filed for forfeiture.  See id. § 983(d)(3)(B)(ii) (requiring an owner who did not take property for value to prove that "depriving the claimant of the property would deprive the claimant of the means to maintain reasonable shelter in the community").  Finally, § 983(d)(3)(B) provides that the district court "shall limit the value of any real property interest for which innocent ownership is recognized under this subparagraph to the value necessary to maintain reasonable shelter in the community for such claimant and all dependents residing with the claimant."  As the district court noted, Randle provided no information as to how the court should limit this value.

all proceeds from its sale.[3]   Under CAFRA, however, there is more to the question than mere ownership.   All relevant property interests must be categorized as pre-existing or after-acquired, and the innocence of ownership must then be determined according to the statutory conditions relevant to that interest.  It is this intermediate step in the law that Randle overlooks.

Second, Randle asserts that he has somehow been deprived of property under an erroneous application of civil forfeiture's relation back doctrine.  This argument is without merit.  Under the relation back doctrine, the Government's interest in property that is subject to civil forfeiture is deemed to vest "upon commission of the act giving rise to forfeiture."  21 U.S.C. § 881(h); see generally United States v. 92 Buena Vista, 507 U.S. 111, 125–29 (1993) (plurality opinion).  Innocently-owned property, however, is not subject to forfeiture, and thus innocent ownership precludes any application of the relation back doctrine.  Because Randle was not the innocent owner of the after-acquired interest in the Ware Seguin property, the relation back doctrine operated to vest title in this interest in the Government in May 2005.  This is a straightforward application of civil forfeiture's relation back doctrine as it has existed for decades.  Randle's assertion that the relation back doctrine somehow trumped his innocent ownership defense begs the question of whether Randle was an innocent owner of the after-acquired interest.

Finally, Randle's argument that a ruling adverse to him would somehow allow the Government to take property subject to forfeiture from innocent owners misunderstands the concept of innocent ownership.  Again, Randle begs the question of whether he was an innocent owner of the entirety of the Ware

---

[3] A review of the record suggests that Randle's belief that he was the innocent owner of the entirety of the Ware Seguin property might have originated in a potentially confusing jury charge.  As neither party addresses (or perhaps even realizes the existence of) any issues regarding the jury charge, and because Randle's failure to offer any intelligible argument as to how he is an innocent owner of the after-acquired interest is dispositive for this appeal, we decline to address the issue as well.

Seguin property.

## III. CONCLUSION

As Randle has failed to meet his burden of proving that he was an innocent owner of the after-acquired interest in the Ware Seguin property, title in that interest passed to the Government in May 2005. The district court correctly held that the Government is entitled to 50% of respondent currency. We therefore AFFIRM the ruling of the district court.

AFFIRMED.